# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## BEAUFORT DIVISION

| | | |
|---|---|---|
| EUGENE W. SANTOS, | ) | C/A 2:08-3994-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| DONALD C. WINTER, SECRETARY | ) | |
| OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment discrimination case was originally filed by the Plaintiff pro se, but he is now represented by counsel. See Court Docket No. 20. The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 25, 2009. After obtaining an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on October 30, 2009, following which the Defendant filed a reply memorandum on November 6, 2009.

Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## Background and Evidence[2]

Plaintiff began employment with the United States Navy on January 25, 1984, and at the time relevant to this lawsuit was working at the Naval Facilities Engineering Command (NAVFAC) as an environmental engineer. Plaintiff was employed by the Defendant until September 30, 2008. During the time period relevant to Plaintiff's claims (essentially 2003-2006), his first line supervisor was Elaine Morrison, Manager of the Hazardous and Solid Waste Branch. Plaintiff's second line supervisor was Marshall Knight, Head of the Resources and Assessment Branch; and his third line supervisor was Douglas Dangerfield, Director of Environmental Service.

Plaintiff initially received good, even excellent, performance appraisals from Morrison. Defendant's Exhibit 1, Bates Nos. 00001-00004 [Performance Appraisals January 19, 1999 through March 2004]. Starting in 2005, however, Morrison deemed Plaintiff's performance as only "acceptable". Id. at Bates 00005. On March 14, 2005, Plaintiff filed an EEO complaint asserting that Morrison had discriminated against him on account of his sex "over last six years". The EEO form advised Plaintiff that allegations of discrimination are required to be brought to the attention of an EEO official within forty-five (45) days of the alleged dispute, and Plaintiff wrote that the most recent instance had occurred on March 1, 2005, when, after a conference call during which Morrison indicated she was sending Plaintiff on an assignment, Morrison stated to the Plaintiff "don't drive them crazy while you are down there". Plaintiff wrote that he believed this comment was "meant to imply that [he was] unprofessional with [his] clients." See Plaintiff's Exhibit [Court Docket No. 36-3, p. 23].

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



Although Plaintiff's EEO complaint was initially not accepted for investigation for failure to state a claim, on appeal an Administrative Judge found that the claim should have been accepted for investigation as a claim of hostile work environment. <u>See</u> Defendant's Exhibit 2. In the interim, Plaintiff had filed a second EEO claim on April 25, 2005, alleging that since the filing of his first EEO intake form on March 14, 2005, Morrison had retaliated against him by placing him on an unofficial performance improvement plan and by issuing a letter of caution to him on April 12, 2005. <u>Plaintiff's Exhibit 6</u>. <u>See</u> also <u>Plaintiff Deposition</u>, pp. 134-135, 165; <u>Defendant's Exhibit 3</u>. Plaintiff was thereafter issued a letter of reprimand on April 29, 2005 for failure to follow directives and failure to complete work as directed. <u>Blevins Deposition, Exhibit 4</u>.[3]

Following the issuance of this letter of reprimand, Plaintiff had numerous meetings with both Morrison and Knight concerning his work performance, which lead to a proposed five (5) day suspension on July 25, 2005, which became an actual five (5) day suspension on October 31, 2005. <u>See</u> Defendant's Exhibits 5 and 9. This suspension was based on Plaintiff's purported refusal to follow the instructions of his supervisor on numerous occasions and for engaging in unprofessional and insubordinate conduct. <u>Id</u>.; see also <u>Blevins Deposition, Exhibit 6</u>.[4] Plaintiff attests in his affidavit that he then, on December 9, 2005, received a second letter of reprimand. <u>See</u> Plaintiff's

---

[3]Plaintiff alleges in this Complaint that he then filed a third informal EEO complaint against Morrison and Marshall Knight that same date, April 29, 2005, for gender discrimination and retaliation. However, no such document is contained in the evidence which has been presented to the Court, and neither party discusses any such filing of April 29, 2005 in their briefs and other materials filed with the Court.

[4]Rex Blevins is a Labor and Employee Relations Specialist, Commander Navy Region South East, who provides guidance to NAVFAC supervisors in applying the agency's progressive discipline policies. In this position, Blevins interviews supervisors, gathers documentation, and recommends a level of discipline based on the Agency's Table of Penalties. <u>Blevins Deposition</u>, pp. 9-12. Blevins testified that he repeatedly recommended more serious disciplinary actions against the Plaintiff than were actually taken by Morrison and Knight. <u>Blevins Deposition</u>, pp. 28-31, 33-34, 47, 59-61.



Exhibit 1, ¶ 34.[5]

Plaintiff attests in his affidavit that he received another disciplinary letter on March 9, 2006. See Plaintiff's Exhibit 1, ¶ 35.[6]  On April 20, 2006 Morrison and Knight came to the conclusion that Plaintiff merited a fourteen (14) day suspension for work misconduct.  Blevins Deposition, pp. 61-64.  A fourteen (14) day suspension followed, dated June 9, 2006, which listed at least twenty-eight (28) instances where Plaintiff was purportedly not in compliance with his work instructions, as well as an incident where he was insubordinate to Morrison.  See Defendant's Exhibit 10; see also Blevins Deposition, pp. 58-59.

In his Complaint, Plaintiff asserts four causes of action: Gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.; retaliation and hostile work environment in violation of Title VII; retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et. seq.; and failure to accommodate in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq.

### Discussion

The Defendant has moved for summary judgment on all of Plaintiff's claims, which are discussed herein, infra.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[5]Defendant makes no reference to any such reprimand, and the undersigned has been unable to find a copy of a reprimand of that date in the Exhibits filed with the Court.  However, Exhibit 10 to Blevins' Deposition does reference a letter of reprimand of December 9, 2005.

[6]Again, the Defendant makes no reference to any such document, and the undersigned has been unable to find a copy of any disciplinary letter dated that date in the Exhibits filed with the Court.  However, Exhibit 10 to Blevins' Deposition does reference a Notice of Performance dated March 9, 2006.

4



judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving

that judgment on the pleadings is appropriate. Once the moving party makes this showing, however,

the opposing party must respond to the motion with "specific facts showing there is a genuine issue

for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (Disparate Treatment Claim)

Plaintiff's first cause of action is for disparate treatment, based on his claim that he

was discriminated against by his supervisor, Elaine Morrison, because of his gender (male).

Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the

structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Plaintiff

has not offered any direct evidence of gender discrimination,[7] and Defendant argues that Plaintiff has

failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether he

was discriminated against because of his gender under the <u>McDonnell Douglas</u> proof scheme[8] to

---

[7]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).

[8]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the law. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); *cf.* <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where
(continued...)



survive summary judgment.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against him. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reason for its actions is a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's gender. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish a prima facie case of gender discrimination, Plaintiff must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. <u>See generally</u>, <u>Austen v. HCA Health Services of Virginia, Inc.</u>, No. 00-2359, 2001

---

[8](…continued)
parties have not argued a mixed-motive theory.]).



WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995),

cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp.

1119 (N.D.W.Va. 1996). For purposes of summary judgment, the Defendant does not dispute that

Plaintiff is a member of a protected class (male).[9] Farr, 570. F.3d at 833. However, Defendant

argues that Plaintiff has failed to prove the remaining elements of his prima facie case, requiring

dismissal of this claim.

When reviewing the evidence for this claim, it is important to note that most of

Plaintiff's arguments regarding his treatment relate to his claim that the Defendant was retaliating

against him for filing his various EEO complaints. Retaliation is a separate and distinct cause of

action from a disparate treatment claim. Cf. Lester v. Natsios, 290 F.Supp.2d 11, 33 (D.D.C.

2003)["Discrete acts constituting discrimination or retaliation claims . . . are different in kind from

a hostile work environment claim that must be based on severe and pervasive discriminatory

intimidation or insult."]. It is also instructive to note that, in his memorandum opposing summary

judgment, Plaintiff supports his disparate treatment claim by arguing that he was "subjected to a

hostile work environment that exceeded to the level of harassment" by Morrison, and that after he

submitted his discrimination complaints he "began to suffer from questionable performance which

had never been presented before in 20 years of employment." Again, such claims (hostile work

environment as well as retaliation) are separate and distinct from a disparate treatment claim. Kilby-

---

[9]When a Plaintiff is a member of a majority class, some courts have held that they must also set out background circumstances to show that the Defendant discriminates against the majority. Farr v. St. Francis Hosp. and Health Centers, 570 F.3d 829, 833 (7th Cir. 2009); Wilson v. Ohio, 178 Fed.Appx. 457, 464-465 (6th Cir. 2006)[In adapting the McDonnell Douglas test to cases of reverse discrimination, the Plaintiff must demonstrate "background circumstances [to] support the suspicion that the Defendant is the unusual employer who discriminates against the majority."] (Quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)). In this case, Plaintiff's claim fails even without being considered under this heightened standard.



Robb v. Spellings, 522 F.Supp.2d 148, 164 (D.D.C. 2007)["[A]lleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim."]; Lester, 290 F.Supp.2d at 33; Parker v. State, Dep't. of Public Safety, 11 F.Supp.2d 467, 475 (D.Del. 1998)["[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address."]; see also Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999).

The only treatment Plaintiff specifically argues as showing Morrison's gender bias against him (as opposed to a retaliatory animus) is the general verbal hostility which he subjectively believed was based on his gender. Plaintiff's Deposition, pp. 86-87, Plaintiff's Exhibit 1 [Affidavit]. Plaintiff testified that in August 2004 Jill Malton started working in the department as a new hire, together with Brian Stockmaster and Dennis Ashley, and that he believed Malton received preferential treatment from Morrison because she was subjected to less supervision than the male employees. Plaintiff's Deposition, pp. 94-95. Plaintiff further testified that Morrison and Malton's conversations were always positive and professional; Plaintiff's Deposition, pp. 99-102; while by contrast Plaintiff's relationship with Morrison "had been very negative" for a number of years. Plaintiff's Deposition, pp. 107-108. Finally, Plaintiff has submitted an affidavit from Shirley Stika, another employee of the NAVFAC,[10] who attests that she observed Morrison treating female

---

[10]Stika was the department secretary. Stika Affidavit, ¶ 11.



employees Malton and Rhonda Bath differently than she did the Plaintiff, with Morrison being "aggressive" towards male employees. Stika also attests that there were "yelling [and] screaming matches" between Morrison and male employees that that did not occur with female employees. See Plaintiff's Exhibit 2 (Stika Affidavit).

Considered in the light most favorable to the Plaintiff, this evidence is sufficient to give rise to a genuine issue of fact as to whether employees who were not members of Plaintiff's protected class were treated more favorably. Texas Dep't of Community Affairs, 450 U.S. at 253 [The burden of establishing a prima facie case is not onerous]. However, this evidence, even considered in the light most favorable to the Plaintiff, is not sufficient by itself to show an adverse employment action for purposes of a disparate treatment claim, as it only shows that Morrison gave Plaintiff more scrutiny than she gave to female employees, and that they had a confrontational relationship. Taylor v. Solis, 571 F.3d 1313 (D.C. Cir. 2009)[Supervisor's criticism not a materially adverse action]; Balock v. Kempthorne, 550 F.3d 1191 (D.C. Cir. 2008)[Supervisor's profanity laden yelling not a materially adverse action]. This kind of activity is not by itself an adverse employment action for purposes of a disparate treatment discrimination claim. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)["A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"]; see generally, Manatt v Bank of America, 339 F.3d 792, 803 (9th Cir. 2003) [Allegations that plaintiff's supervisor stared at her in an angry way and that co-workers were being mean to her were insufficient to show an adverse employment action]; Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-376 (4th Cir. 2004)[Adverse employment action is a discriminatory act which "adversely affects the terms,



conditions, or benefits of the Plaintiff's employment"]; <u>Lewis v. Forrest Pharmaceuticals, Inc.</u>, 217 F.Supp.2, 638, 648 (D.of M. 2002)["Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment"]; <u>see</u> <u>also</u> <u>Manning v. Metropolitan Life Ins. Co., Inc.</u>, 127 F.3d 686, 692 (8th Cir. 1997) [evidence of employer hostility, disrespect, and ostracism towards employee insufficient to demonstrate an "adverse employment action that constitutes the sort of ultimate employment decision intended to be actionable under Title VII"]; <u>Cooper v. Southern California Edison Co.</u>, 170 Fed.Appx. 496, 498 (9th Cir. 2006) ["[A]ny potential ridicule and ostracism (plaintiff) suffered was not an adverse employment action."].

In addition to this evidence, Plaintiff does also cite to the written disciplinary actions taken against him, including suspensions. These actions might rise to the level of adverse employment actions for purpose of a disparate treatment claim. <u>Burlington</u>, 524 U.S. at 761. However, in his brief Plaintiff blames these disciplinary actions on a retaliatory animus by not just Morrison, but others in his supervisory chain of command, due to his filing of EEO complaints. Even so, Plaintiff could also rely on this same evidence to support his disparate treatment claim. <u>Cf.</u> <u>Bragg v. Office of Dist. Atty., Thirteenth Judicial District</u>, No. 07-324, 2009 WL 2151333 at * 25 (D.Colo. July 16, 2007)[Noting that a plaintiff can pursue separate discrimination and harassment claims even though they are essentially based on the same conduct]. However, even if these disciplinary actions are considered as part of Plaintiff's disparate treatment claim, and qualify as adverse employment actions for purposes of Plaintiff's disparate treatment claim, there is no evidence to show they were based on Plaintiff's gender. Therefore, even if the Court were to assume establishment of a prima facie case, no pretext in these employment decisions has been shown. <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234 (4th Cir. 1991); <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993)[In order to show pretext, "'the evidence as a whole... must be sufficient for



a reasonable fact-finder to infer that the employer's decision was motivated by [gender animus].'"]
(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank
of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)).

First, the letter of caution issued April 2005 related to Plaintiff's attendance at a
training seminar without getting prior supervisory approval for his absence, and for engaging in
unprofessional conduct in the workplace when he yelled at his supervisor. Defendant's Exhibit 3.
It is undisputed that Plaintiff did not in fact get permission to go to the training seminar. Plaintiff's
Deposition, pp. 135-140. Plaintiff also admitted during his deposition to having raised his voice at
Morrison. See Plaintiff's Deposition, p. 112. Further, before issuing this letter of caution, Morrison
sought input and advice from Blevins (a male), who after a review of the facts recommended the
letter of caution and then was the one who actually drafted it. Blevins Deposition, pp. 24-25.
Plaintiff has not pointed to any evidence to show that his gender was the reason for the issuance of
this letter of caution.

As for the letter of reprimand dated April 29, 2005, this was based on Morrison's
judgement that Plaintiff's work on the Jacksonville and Corpus Christi projects was "inferior and not
completed as directed." See Blevins Deposition, Exhibit 4. Again, Morrison sought Blevins' advice
before issuing this letter of reprimand. Blevins testified that he investigated this matter for
approximately a month and a half, which included a review of numerous emails which showed "at
least nine instances where [Plaintiff] failed to comply with what [he was] told to do or directed to
do to get the work done." Blevins Deposition, pp. 28-29. Blevins also testified that he had been

> dealing with [the Plaintiff] since November '02. And there were
> numerous instances in-between '02 and '05 that I recall [Plaintiff] was
> disciplined for the same thing. He had a propensity for not following
> the rules, not doing what he was told. He was repetitively disciplined
> for that, among other things, being insubordinate, being disruptive in



> the workplace. And at this time frame, I was recommending much
> harsher penalties because it was repetitive conduct. He probably had
> been disciplined six or eight times for the same thing.

<u>Blevins Deposition</u>, pp. 30-31.

Blevins further testified that he had recommended that a "much harsher discipline be taken", but that "the supervisor [Morrison] ultimately decided it was going to be a letter of reprimand." <u>Id</u>., p. 31.

This evidence shows that Blevins, a male, thoroughly reviewed the record in this matter before making a recommendation to Morrison that a harsher penalty be imposed on the Plaintiff than the one Morrison chose to impose. Hence, whatever the merits of the alleged employment problems underlying this decision, the evidence certainly does not support a claim that this letter of reprimand was issued because of Plaintiff's gender. In fact, Morrison treated Plaintiff better than Blevins, a male, had recommended. In response to this evidence, Plaintiff only argues in his brief that "much communication, and work product, from this period of time was not included as part of this letter of reprimand." <u>Plaintiff's Brief</u>, p. 17. However, Plaintiff has not himself submitted this evidence, or if he has he has not cited to where in the record such evidence can be found.[11] Nor does Plaintiff provide a satisfactory explanation in his affidavit as to why this letter of reprimand had anything to do with his gender. <u>See</u> <u>Plaintiff's Exhibit 1</u>, ¶¶ 32-33; <u>see also</u> <u>Blevins Deposition</u>, p. 34.

With respect to the five calendar day suspension dated October 26, 2005; <u>see</u> <u>Blevins Deposition, Exhibit 7</u>; this suspension is signed by Douglas Dangerfield, a male. The evidence shows

---

[11]Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's claims on summary judgment. <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 871 (1994); <u>Malina v. Baltimore Gas & Elec.</u>, 18 F.Supp.2d 596, 604 (D.Md. 1998); <u>Hayes v. North State Law Enforcement Officers Ass'n</u>, 10 F.3d 207, 215 (4th Cir. 1993), <u>cert. denied sub nom</u>, <u>Price v. City of Charlotte</u>, 420 U.S. 1116 (1997).



that this suspension arose out of Plaintiff's work on a permit renewal application, on which he had been specifically instructed by Morrison not to contact the state regulator concerning the application and that the attachments to the permit application should be stand alone documents. Plaintiff conceded at his deposition that he violated these instructions; see Plaintiff's Deposition, p. 116; see also Plaintiff's Brief, pp. 18-19; and what to do about Plaintiff's conduct was again reviewed by Blevins prior to any action being taken. Blevins' Deposition, pp. 40-41. Blevins testified that his initial recommendation was to fire the Plaintiff, but that Plaintiff's supervisors did not want to "ruin his career". Blevins further testified that

> They wanted to give him one more chance and one more chance and one more chance. Quite [frankly], I became frustrated with the issue. I think I said this earlier, if not, I will say it again, had this been any other organization, this person would have been fired. Why they put up with it that long was beyond me, but it was their call.

Blevins' Deposition, p. 47.

Both Blevins and Dangerfield are males. Therefore, again whatever the merits of the decision and whether or not Plaintiff should have been suspended, there is nothing in this evidence to show that Plaintiff being a male had anything to do with the decision. See also, Plaintiff's Exhibit 1, ¶ 33.

Finally, with respect to Plaintiff's fourteen (14) day suspension dated June 9, 2006; see Defendant's Exhibit 10; this suspension was based on Plaintiff's purported failure to follow instructions and insubordinate defiance to competent authority. Plaintiff does not dispute that, among other conduct, he contacted a customer directly to complain about an assignment and that he told the customer that "unreasonable demands" were being placed on him. Plaintiff's Deposition, pp. 113-114. Before reaching a decision in this matter, both Morrison and Knight (a male) met with Blevins on March 22, 2006, at which Blevins again recommended that Plaintiff be fired. Blevins Deposition, pp. 59-60. However, Blevins testified that Knight wanted to "slow down the process on progressive



discipline . . . . [and] give [   ] this guy every chance . . . ." Id. Blevins testified that Morrison and Knight then agreed to propose a fourteen (14) day suspension, which was ultimately approved by Dangerfield after his own review of the facts. Blevins' Deposition, pp. 61-64.

Additionally, the notice itself indicates that Plaintiff was given an opportunity to respond to his proposed suspension, including the right to furnish affidavits and other documentary evidence, but that Plaintiff did not submit a reply either orally or in writing. The reviewing official (again, Douglas Dangerfield) then concluded that not only had Plaintiff failed to follow his supervisor's instructions as charged and that he had been insubordinate and defiant to competent authority, but that Plaintiff's refusal to obey Morrison's instructions "was an intentional attempt on [Plaintiff's] part to be combative and defiant towards your supervisor's instructions and to embarrass the agency with its clients." See Defendant's Exhibit 10, at p. 2.[12] A review of the decision as well as the emails and other documentation provided to the Court fails to show any reference to Plaintiff's gender or indicia of a gender animus on the part of any of these decision makers (three out of four of whom were male).

In sum, Plaintiff has simply offered no evidence to show that any of the actions he complains about were based on his gender, other than his own unsubstantiated speculation. Plaintiff cannot defeat a properly supported motion for summary judgment with unsupported speculation or allegations of discrimination; Felty v. Graves-Humphreys, Co., 818 F.2d 1126, 1128 (4th Cir. 1987);

---

[12]Even Stika noted in her affidavit that she believed a lot of Plaintiff's and Morrison's problems "were personality problems. I don't think [Plaintiff] backed down when others . . . may have. I think it reached a power struggle between Ms. Morrison and [Plaintiff]." Plaintiff's Exhibit 2, ¶ 29. Assuming the truth of this statement for purposes of summary judgment, personality clashes by themselves do not constitute evidence to support a gender discrimination claim. Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994), cert. denied, 516 U.S. 826 (1995)["general harassment if not [based on a protected criteria] is not actionable"].



nor may he "create a genuine issue of fact through mere speculation or the building of one inference upon another" <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, the Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

## II.

### (Hostile Work Environment Claim)

To establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on his gender; 3) the conduct was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment; and 4) the conduct is imputable on some factual basis to his employer. <u>Ocheltree</u>, 308 F.3d at 356; <u>Spicer</u>, 66 F.3d at 710; <u>Brown</u>, 184 F.3d at 393. The evidence previously discussed, <u>supra</u>, is sufficient to show that Plaintiff was subjected to unwelcome conduct in a work related setting, and was imputable to his employer. However, Defendant argues that Plaintiff's hostile work environment claim fails because the evidence does not show that the conduct complained of was based on his gender, nor has Plaintiff shown that he was subjected to conduct sufficiently severe or pervasive enough to alter his condition of employment and to create an abusive work environment.

In considering this claim, the Court need go no further than to examine whether the conduct complained of was based on Plaintiff's gender (as opposed to a retaliatory animus for his having filed EEO complaints, which Plaintiff, as an alternative theory,[13] also alleges). While Plaintiff has testified that he believed Morrison treated him more harshly because of his gender, Plaintiff's own self-interested statements as to what he believed or perceived are not sufficient evidence to maintain

---

[13]<u>See</u>, discussion, <u>Section III</u>, <u>infra</u>.

15



this claim.  <u>McNairn v. Sullivan</u>, 929 F.2d 974 (4th Cir. 1991);  <u>Smith v. Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980); <u>Komel v. Jewel Cos.</u>, 874 F.2d 472, 475 (7th Cir. 1989).  Plaintiff has also submitted the affidavit from Shirley Stika, wherein she attests that she observed female employees receiving more favorable treatment from Morrison than did the Plaintiff.  However, Stika also attests that she believes a lot of this treatment was due to "personality problems" between Plaintiff and Morrison, and that it had reached the point of a "power struggle" between the two.  Such conduct does not constitute treatment based on gender.  <u>Sullivan v. River Valley School District</u>, 197 F.3d 804, 815 (6th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1262 (2000) ["Without a showing that the reasons for his alleged mistreatment were discriminatory,  Plaintiff cannot establish a prima facie case for relief]; <u>Bolden</u>, 43 F.3d at 551 ["general harassment if not [based on a protected criteria] is not actionable"].  Finally, with regard to the specific disciplinary actions taken by the Defendant, none of the documents and other evidence submitted with respect to these incidents support a finding that Plaintiff's gender was the reason for this conduct.  <u>See,</u> discussion, <u>supra;</u> <u>Causey v. Balog</u>, 162 F.3d 795, 801-802 (4th Cir. 1998)[Affirming summary judgment wherein employee failed to show that his employers alleged mistreatment was based on his [gender]].

  Therefore, even if the Court were to find for purposes of summary judgment that Plaintiff's work environment during the relevant time period was sufficiently severe or pervasive to alter his conditions of employment and to create an abusive work environment, Plaintiff's hostile work environment claim still fails because he has not presented any evidence whatsoever to show that the conduct complained of was based on a gender animus.  Indeed, Plaintiff fails in his brief opposing summary judgment to point to *any* evidence of offensive conduct or statements containing any indicia of a gender animus on the part of any employee of the Defendant, including Morrison, other than Stika's affidavit of October 2005, who herself concludes her affidavit by stating that she believed a



lot of Morrison and Plaintiff's problems were "personality problems" as a result of a "power struggle" between the two. Hence, there is simply not sufficient evidence to create a genuine issue of fact with respect to whether the conduct Plaintiff complains of was based on his gender to survive summary judgment. See Bolden, 43 F.3d at 551 ["general harassment if not [based on a protected criteria] is not actionable"]; Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."].

Since Plaintiff has failed to satisfy his burden with respect to this cause of action, this claim should be dismissed. Norris v. City of Anderson, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["Since Plaintiff's allegation contains no [conduct prohibited by Title VII], it cannot be used to support his hostile work environment claim"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Beale, 769 F.2d at 214[A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].; Causey, 162 F.3d at 802 [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]; Godoy v. Habersham County, No. 04-211, 2006 WL 739369 at *11 (N.D.Ga. Mar. 21, 2006).

### III.

### (Retaliation Claim)

With regard to Plaintiff's Title VII retaliation claim, section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

It shall be an unlawful practice for an employer to discriminate against

17



any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse[  ] action[14] against the employee; and (3) a causal connection existed between the protected activity and the adverse action." <u>Id.</u>; <u>Munday v. Waste Management of North America, Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997). Once a <u>prima</u> <u>facie</u> case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. <u>Id.</u>

For purposes of summary judgment, the Defendant has not disputed Plaintiff's

---

[14]The adverse action required for a retaliation claim is somewhat different from that required for a disparate treatment claim. See <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)[holding that to establish an adverse action for purposes of a Title VII retaliation claim, "a Plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination."] (Quoting <u>Rochen v. Gonzales</u>, 438 F3d 1211, 1219 (C.A.D.C. 2006)).



establishment of a <u>prima facie</u> case of retaliation. Plaintiff obviously engaged in protected activity on numerous occasions by filing EEO complaints, the various employee reprimands and suspensions he received constituted adverse actions, and the fact that Plaintiff was continually being disciplined by the Defendant after Plaintiff submitted EEO filings is sufficient to establish a causal connection to satisfy all of the elements of the retaliation prima facie case. Cf. <u>Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago</u>, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; <u>Pantoja v. American NTN Bearing Mfg. Corp.</u>, 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice to support [ ] prima facie case."]; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous].

As for whether the Defendant has set forth legitimate, non-discriminatory reasons for the actions taken, as previously discussed herein, <u>supra</u>, the Defendant's evidence reflects that Plaintiff's disciplinary charges were a result of his repeated episodes of misconduct and insubordination. This evidence includes not just the documents supporting the disciplinary actions taken, but deposition testimony on the merits of the charges against Plaintiff, all of which is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's actions. See <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]. Therefore, Plaintiff must present evidence of pretext in the making of these decisions in order to avoid summary judgment on his retaliation claim.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to retaliate against him because of his having engaged in protected activity, he would not have been subjected to the employment actions at issue. <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright</u>, 933 F.2d at 234.

19



"Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" <u>LeBlanc</u>, 6 F.3d at 843 (citing <u>Goldman</u>, 985 F.2d at 1117 (quoting <u>Connell</u>, 924 F.2d at 1172, n. 3); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence. Plaintiff concedes through both his deposition testimony as well as in the arguments in his brief that he in fact committed many of the work infractions for which he was disciplined. He admits that he went to a training seminar without permission, that he yelled at his supervisor in a work setting, that he contacted a state regulator after being specifically instructed not to do so in the process of a permit application, and that he contacted a customer to complain about a work assignment. The record also shows that Plaintiff's supervisors consistently decided to subject Plaintiff to less discipline than was being recommended by the Labor and Employee Relations Specialist, who was making his recommendations based on the agency's table of penalties. <u>Blevins' Deposition</u>, pp. 12, 59.

While Plaintiff may (and indeed does) disagree with the personnel actions taken against him, in order to succeed on this Title VII retaliation claim, Plaintiff's evidence must show that the reason he was disciplined was because he pursued EEO claims against the Defendant, not because the Defendant made a mistake, was incorrect in its findings concerning Plaintiff's employment, or even that his supervisor just did not like him. <u>See generally</u>, <u>Jamil v. Secretary Dep't of Defense</u>, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); <u>Holder v. Raleigh</u>, 867 F.2d 823, 828 (4th Cir. 1989); <u>Crowley v. Prince George's County</u>, 890 F.2d 683, 687 (4th Cir. 1989), <u>cert.</u> <u>denied</u>, 111 S.Ct. 101 (1992); <u>McCollum v. Bolger</u>, 794 F.2d 602, 610 (11th Cir. 1986), <u>cert.</u> <u>denied</u>, 479 U.S. 1034 (1987); <u>see generally</u> <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); <u>Jones v. Orleans Parish School Board</u>, 679 F.2d 32, 38 (5th Cir. 1982), <u>cert.</u> <u>denied</u>, 461 U.S. 951 (1983); <u>North</u>



Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983); Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; cf. Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; see Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977). Plaintiff has failed to present any such evidence. Rather, Plaintiff's argument is essentially that, because these employment actions and decisions occurred during a period of time when he was also making complaints to EEO counselors and filing EEO complaints, the Defendant's actions constituted unlawful retaliation. That is simply not the standard for a Title VII retaliation claim, for if it were, then any employee who engaged in protected activity would thereafter be shielded from normal workplace discipline. Cf. Sherrill v. Potter, No. 06-4120, 2008 WL 5220291 at * * 2-3 (N.D.Ill. Dec. 9, 2008).

In sum, while Plaintiff obviously believes he was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to him was appropriate, Plaintiff has simply provided no evidence to support his general and conclusory allegations that the *reason* he received these adverse employment actions was because he filed EEO complaints or otherwise engaged in activity protected by Title VII. Plaintiff is not guaranteed a work environment free of stress, dissatisfaction with work assignments, or difficult or unpleasant working conditions, just



because he has pursued an EEO claim; <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994); <u>Hopkins v. Baltimore Gas and Electric Co.</u>, 871 F.Supp. 822, 836 (D.Md. 1994), <u>aff'd</u> 78 F.3d 745 (4th Cir. 1996), <u>cert.</u> <u>denied</u>, 117 S.Ct. 70 (1996) [finding that "many of [Plaintiff's] allegations can be attributed to an increase of predictable tension in an office after a discrimination charge is filed. This is not adverse employment action."]; <u>Geisler v. Folsom</u>, 735 F.2d 991, 994 (6th Cir. 1984); <u>Manatt v Bank of America</u>, 339 F.3d 792, 803 (9th Cir. 2003) [Allegations that plaintiff's supervisor stared at her in an angry way and that co-workers were being mean to her were insufficient to show an adverse employment action]; <i>Cf.</i> <u>Flaherty v. Gas Research Institute</u>, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; and the mere fact that Plaintiff engaged in protected activity does not immunize him from actions by his employer which may otherwise be justified by his work record or performance. <u>Ross</u>, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."]; <u>Bodoy v. North Arundel Hospital</u>, 945 F.Supp. 890, 898 (D.Md. 1996).

Plaintiff has offered no evidence to show that the actions complained of were the result of unlawful retaliation, other than his own subjective belief and speculation. <u>Beale</u>, 769 F.2d at 214 [Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; <u>Ross</u>, 759 F.2d at 365; <u>McNairn</u>, 929 F.2d at 980; <u>Smith</u>, 618 F.2d at 1067; <u>Komel</u>, 874 F.2d at 475; <u>Williams</u>, 871 F.2d at 456 (citing <u>Gairola v. Virginia Dep't of General Servs.</u>, 753 F.2d 1281, 1288 (4th Cir. 1985)); <u>United Black Fire Fighters of Norfolk v. Hirst</u>, 604 F.2d 844 (4th Cir. 1979). <u>See</u> Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Felty</u>, 818 F.2d 1129-1130; <u>Gairola</u>, 753 F.2d at 1288, n.4. Therefore, Plaintiff's Title VII retaliation claim is without merit and should be dismissed.



# IV.

## (FMLA Claim)

Plaintiff also alleges that he was retaliated against in violation of the FMLA.[15]  This claim arises out of Plaintiff's assertion that he received a notice of proposed five (5) day suspension on July 25, 2005, the day he returned to work after being off on FMLA leave.  This claim fails for several reasons.

First, Plaintiff himself conceded in his deposition that, other than "the timing" that he received a suspension notice, he had no evidence that his suspension was in retaliation for having taken FMLA leave.  Plaintiff's Deposition, p. 53.  Plaintiff also never filed an administrative complaint of any kind asserting an FMLA violation.  Id., pp. 53-54.  Therefore, by Plaintiff's own admission, he failed to exhaust his administrative remedies with respect to this claim.  Williams v. AT&T, Inc., 356 Fed.Appx. 761, 766 (5th Cir. 2009)[FMLA claims subject to exhaustion requirement].  Finally, as a federal employee with more than twelve (12) months of service, Plaintiff's FMLA claim is covered by Title II of that Act; 5 U.S.C. § 6381, et. seq; and Defendant argues that Title II affords Plaintiff no private right of action under the FMLA.  Cf. Chandler v. Bernanke, 531 F.Supp.2d 193, 201 (D.D.C. 2008)(citing Sullivan-Obst v. Powell, 300 F.Supp.2d 85, 99 (D.D.C. 2004)); Gardner v. United States, No. 96-1467, 1999 WL 164412, at * 7 (D.D.C. Jan. 29, 1999); Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997).

In his memorandum opposing summary judgment, Plaintiff simply recites some

---

[15]"The FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).  Plaintiff is asserting a retaliation claim.



boilerplate FMLA law, and then states that the "Defendant contends that no acts of willfulness occurred and they did not act willfully." That, of course, is not Defendant's argument at all. Plaintiff has failed to address Defendant's arguments that he failed to exhaust his administrative remedies and that he has no private right of action under the FMLA, nor has Plaintiff presented any argument whatsoever to counter or contest the evidence or case law cited by the Defendant in support of dismissal of this claim on these grounds. Therefore, the Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

## V.

## (ADA Claim)

Plaintiff's final cause of action asserts a claim under the Americans with Disabilities Act. In his deposition and in his affidavit, Plaintiff claims a disability under the ADA of anxiety disorder. Plaintiff's Deposition, pp. 121, 141, 146-147; Plaintiff's Exhibit 1, ¶¶ 54, 58-59.

Defendant argues, inter alia, that this claim must be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to any disability claim, which would be considered under the Rehabilitation Act of 1973 in any event.[16] Both the Rehabilitation Act and the ADA require

___

[16]As a federal employee, Plaintiff's disability allegations are considered under the Rehabilitation Action of 1973, 29 U.S.C. § 791, et seq., which provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." See 29 U.S.C. § 794. Plaintiff was entitled to protection under the Rehabilitation Act, with claims under that Act considered in conjunction with the standard set forth for claims against private employers through the Americans with Disabilities Act (ADA). Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995)[Whether suit is filed against a federally funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same]; Loos v. Napolitano, 665 F.Supp.2d 1054, 1057-1058 (D.Neb. 2009)["Although the Rehabilitation Act incorporates standards of the ADA . . . , [Plaintiff], as a former federal employee, is not entitled to separately recover under . . . the ADA
(continued...)



exhaustion of administrative remedies prior to proceeding with a federal lawsuit, and Defendant argues in its brief that Plaintiff failed to exhaust his administrative remedies with respect to any disability claim, resulting in his disability claim being subject to dismissal. The undersigned agrees.

Claims of unlawful discrimination by federal employees may not be entertained in the federal courts unless the employee has first exhausted the administrative process provided by federal statute. Brown v. GSA, 425 U.S. 820, 832 (1976); cf. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002). When asked at his deposition if he had filed a complaint of discrimination based on a disability, Plaintiff responded "I don't think so". Plaintiff's Deposition, p. 175. The Defendant also has no record of Plaintiff ever having filed a claim of discrimination on the basis of a disability. See Defendant's Exhibit 12 [Nelson Affidavit]. In his brief opposing summary judgment, Plaintiff did not even respond to the Defendant's argument for dismissal of this cause of action; see Plaintiff's Brief, p. 22; nor has Plaintiff set forth any argument or cited to any evidence whatsoever to support his being allowed to continue with this claim. See Brand v. North Carolina Dep't. of Crime Control & Pub. Safety, 352 F.Supp.2d 606, 618 (M.D.N.C. 2004)[Holding that employee waived discrimination claim by failing to address that claim in response to employer's motion for summary judgment]. Therefore, this cause of action should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

---

[16](…continued)
because . . . the ADA excludes from its coverage the United States or corporations wholly owned by the United States."].

25



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May 27, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

